[No. 6773.    Decided August 5, 1907.]

THE CITY OF SEATTLE, *Respondent*, v. PUGET SOUND IMPROVEMENT COMPANY, *Appellant.*[1]

INDEMNITY — NEGLIGENCE — MUNICIPAL CORPORATIONS — RECOVERY OVER BY CITY—JUDGMENT—CONCLUSIVENESS. Where trapdoors are negligently maintained in a sidewalk by the abutting owner, whereby a pedestrian is injured, the city and the owner are not *in pari delicto* or joint wrongdoers as between each other; and upon recovery of judgment against the city in an action for the injuries, and payment of the same, the city has a remedy over against the lot owner for the amount paid on the judgment, which is conclusive on the lot owner if due notice to defend the action was given.

NEGLIGENCE — DANGEROUS PREMISES — LEASE — PARTIES LIABLE — OPENING IN SIDEWALK. The owner of a building is liable for negligence in maintaining trapdoors over an areaway, placed in the sidewalk exclusively for the benefit of the building, where the building was in his control, although parts of it were leased to other parties.

Appeal from a judgment of the superior court for King county, Morris, J., entered November 21, 1906, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action to recover over from a lot owner the amount paid on a judgment for injuries resulting from a defective sidewalk. Affirmed.

[1]Reported in 91 Pac. 255.

*Bausman & Kelleher, Peters & Powell,* and *R. P. Oldham,* for appellant.

*Scott Calhoun* and *Elmer E. Todd,* for respondent.

MOUNT, J.—This action was brought by the respondent to recover over from the appellant the amount of a judgment for personal injuries, recovered by C. S. Smith against the city, and paid by the city. The case was tried to the court without a jury, and a judgment was rendered against the appellant. The appellant alleges that the court erred in overruling a demurrer to the complaint and in making certain findings of fact. The material allegations of the complaint are as follows:

"That Second avenue is now, and was at all times herein mentioned a public street in said city of Seattle, being one of the principal streets in said city and a common thoroughfare, and as such was much used by the public; that at all times herein mentioned said defendant was the owner of lots 1 and 4, in block 6, of the plat of the town, now city, of Seattle, as laid off by C. D. Boren and A. A. Denny, in the county of King, state of Washington; that at all times herein mentioned there was situated on said lot a four-story brick building, known as the 'Boston Block,' and under the sidewalk on Second avenue, in front of said lots, particularly in front of that store building in said block known as No. 722, Second avenue, in said city, said defendant maintained an areaway, and at or near said store building in said sidewalk maintained a trapdoor down into said areaway and cellar, beneath said sidewalk; that on the night of the 19th of October, 1901, and for many months prior thereto, the defendant had negligently and carelessly maintained said trapdoor in said sidewalk, as aforesaid; that said trapdoor, which was made of iron, was unlawfully and dangerously raised above the surface of the adjoining sidewalk from a height of from two to three inches; that said opening in the sidewalk was covered, as aforesaid, by iron trapdoors, which met over the middle of said opening; that at said point of meeting, one of said iron doors projects above the other, and said iron doors had become on the surface worn smooth, and at all times were slippery and dangerous to life and to travelers using the same in walking over said sidewalk

in the ordinary and usual manner; that said defendant carelessly and negligently failed to place any danger signals as a warning around or about said defective place in said street and sidewalk and said obstruction therein contained; that on the night of said 19th of October, 1901, one Christina D. Smith, while lawfully traveling along said Second avenue at or near No. 722, Second avenue, stumbled on said iron doors, and the same then and there being slippery, stumbled, slipped and fell, and was thereby thrown on said iron doors on said sidewalk and ground, and therefrom she sustained great and severe injuries."

Then follows allegations of the extent of the injuries to Mrs. Smith, and that she duly presented her claim to the city for damages.

"That thereafter, to wit, on or about the 11th day of February, 1902, said Christina D. Smith and Lee Smith, her husband, instituted an action in the superior court of King county, Washington, to recover damages against the city of Seattle on account of said injuries so received as aforesaid, which cause is numbered 34982 in the files of said court; that said city of Seattle duly defended against said action and issues were joined therein, and a trial was had upon said issues in said court on January 29th, 1903, resulting in a verdict in favor of said Christina D. Smith and her husband in the sum of $7,633.00; that said city of Seattle duly filed its motion for a new trial, which said motion was denied by the court, and judgment entered upon said verdict in the sum of $7,633.00 and costs against said city; that from said judgment the city of Seattle duly appealed to the supreme court of the state of Washington, and, thereafter, the supreme court of the state of Washington affirmed said judgment of the superior court, with costs; that thereafter, on the 23d day of December, 1903, the remittitur from the supreme court affirming said judgment was filed in the office of the clerk of said superior court and final judgment was entered against said city of Seattle for $7,633.00, and costs amounting to $180.15; that on said 23d day of December, 1903, the city of Seattle was forced to and did pay said judgment, with interests and costs, amounting in the aggregate to $8,151.91; that in addition thereto, said city of Seattle was forced to and did expend

as necessary expense in defending said suit in prosecuting said appeal the sum of $500."

Then follows an allegation of notice to the appellant to defend the suit.

Upon the sufficiency of this complaint, the appellant argues that the complaint shows that the appellant and the city were joint tort feasors, and since there can be no indemnity by one joint tort feasor against another, there can be no recovery in this case. But as we read the allegations of the complaint, we find nothing in it to justify the conclusion that the city and the appellant were joint tort feasors. The allegations are, that the defendant maintained an areaway beneath the sidewalk, and trapdoors in the sidewalk; that the trapdoors were carelessly and negligently maintained by defendant and were unlawfully and dangerously raised above the surface of the sidewalk two or three inches; that said doors were worn smooth and slippery and were dangerous, and that defendant failed to protect against such dangers. These allegations are that the negligence was of the defendant, not of the city. It is true that it is the duty of the city to keep its streets reasonably safe, and if the trapdoors had been placed in the sidewalk by the city for the benefit of the city, it would alone be liable. But where the trapdoors were placed in the sidewalk by the defendant for its sole use and benefit, it was the duty of the defendant to properly and safely place and maintain them. The defendant's negligence in regard thereto would be construed as the city's negligence with reference to third persons who might be injured thereon, because of the duty of the city to keep the streets reasonably safe. But while the city would be liable to third persons on account of an injury occasioned thereby, it would not be a joint tort feasor with the defendant, because the acts of negligence are the wrongful acts of the defendant alone. The great weight of authority seems to hold that there can be a recovery over by a municipality where a street is rendered unsafe by the wrongful use of another, and where damages are recovered against the municipality

therefor. The rule is stated as follows in 2 Dillon on Municipal Corporations (4th ed.), at § 1035:

"If a municipal corporation be held liable for damages sustained in consequence of the unsafe condition of the sidewalks or streets, it has a remedy over against the person by whose wrongful act or conduct the sidewalk or street was rendered unsafe, unless the corporation was itself a wrong-doer, as between itself and the author of the nuisance, . . ."

In *Chicago v. Robbins*, 2 Black 418, 17 L. Ed. 298, the supreme court of the United States said:

"It is well settled that a municipal corporation having the exclusive care and control of the streets, is obliged to see that they are kept safe for the purpose of persons and property, and to abate all nuisances that might prove dangerous; and if this plain duty is neglected, and any one is injured, it is liable for the damages sustained. The corporation has, however, a remedy over against the party that is in fault and has so used the streets as to produce the injury, unless it was also a wrong-doer."

See, also, *Robbins v. Chicago*, 4 Wall. 657, 18 L. Ed. 427; *Washington Gaslight Co. v. District of Columbia*, 161 U. S. 316, 16 Sup. Ct. 564, and note to this case in 40 Lawyer's Cooperative Edition 712.

In *McNaughton v. Elkhart*, 85 Ind. 384, the court said:

"It is well settled that when a town or city has been compelled to pay damages on account of excavations and obstructions in its streets, wrongfully made, or lawfully made and negligently left in a dangerous condition, it has a right of action over against the author or authors of the nuisance for the amount so paid; and that, if properly notified of the action, such person or persons are bound and concluded by the judgment recovered against the corporation, as to all questions adjudicated in such action."

In *Milford v. Holbrook*, 9 Allen 17, 85 Am. Dec. 735, where the town of Milford was compelled to pay a judgment on account of injuries received by one Day through the falling of an awning, the court, in sustaining a judgment over in

favor of the town against the person maintaining the awning, said:

"The plaintiffs were not *in pari delicto* with the defendant, and therefore the principle that one joint wrongdoer cannot have contribution against another has no pertinency. The only fault or negligence which could be imputed to the town, on the facts shown, was a failure to remedy the nuisance which the defendant has caused. This is no bar to their claim for indemnity."

In *Canandaigua v. Foster,* 156 N. Y. 354, 50 N. E. 971, 66 Am. St. 575, 41 L. R. A. 554, a judgment over in favor of the town was sustained. The court of appeals of New York said:

"But whoever, even by due permission, cuts a hole in the sidewalk for the benefit of his adjoining property must use reasonable care to protect the public from danger on account thereof. Reasonable care requires that he should provide a proper covering, inspect it from time to time, and repair it when necessary, as otherwise passersby, for whose benefit the sidewalk is maintained, may be injured."

Measured by these rules the complaint was sufficient.

Appellant also contends that the court erred in finding that the appellant maintained the trapdoors and areaway beneath the sidewalk, and that appellant had control thereof. It is admitted that the appellant owned the building, and that the areaway and trapdoors were placed in the sidewalk exclusively for the benefit of the building. Under these circumstances it became the duty of the appellant to maintain the trapdoors reasonably safe for passersby. The evidence conclusively shows that the building was at all times under the control of the appellant. It is true the appellant leased offices and storerooms therein to different tenants, but the control of the building and its maintenance and the actual possession of a part of the building were in the appellant personally at all times. Under these circumstances appellant would be liable. As re-

lating to both these points, the rule is well stated in *Canandaigua v. Foster, supra,* as follows:

"While the owner cannot be held liable in this action for failing to repair the entire sidewalk in front of his premises, was he properly held liable for failing to keep in repair the grate itself, which was his own structure? This depends upon the duty that he assumed when he cut a hole in the sidewalk and covered it with the grate. That duty included proper construction in the first place, and reasonable care on the part of the owner to keep the grate in repair thereafter, as long as he continued in possession. The duty sprang from the necessity of having safe sidewalks, and as the necessity is continuous, so is the duty. Upon no other ground can the construction of a grate in a sidewalk, which is an interference with a public highway, be justified, even when permission is duly granted. Upon the transfer of the entire interest and possession to another, as the duty runs with the land, it would be cast upon the grantee. So a lease of the entire premises and possession thereof by the tenant, would doubtless throw the burden upon the latter. (Shearman & Redfield on Negligence [5th ed.] §§ 710, 713.) The conveyance of an undivided interest, however, would not have that effect, and the demise of a part of the premises should not. The obligation goes with the land and cannot be discharged by a partial alienation of the land, at least, unless the alienation, if for a fixed term, carries with it the exclusive possession of the premises for that term. Entire possession by a tenant from foundation to roof doubtless involves the duty of keeping a grate in front of the premises in repair, which otherwise rests on the owner of the fee. But whoever, even by due permission, cuts a hole in the sidewalk for the benefit of his adjoining property must use reasonable care to protect the public from danger on account thereof. Reasonable care requires that he should provide a proper covering, inspect it from time to time and repair it when necessary as otherwise passersby, for whose benefit the sidewalk is maintained, may be injured. If he parts with the premises, or parts with the possession thereof for a period, the burden falls on his successor in title or possession. If he transfers either title or possession, in part only, he does not escape the burden. The implied duty assumed when the hole was cut and the grate placed over it requires reasonable precaution on the part of the owner to protect the public as long as he remains

the owner and is in possession of any part of the building on the abutting land. He cannot cast the burden of maintenance on the public any more than he could have cast upon them the burden of original construction, for the grate is wholly for the benefit of his property. Nor can he relieve himself of the duty without parting with the entire possession of the property benefited, for the safety of·the public requires that the owner, as long as he is in possession of any part of the property, should be compelled to keep his structure in the sidewalk in suitable condition for use as a part of the sidewalk. As the duty is imposed by law for the public safety, its extent is measured by whatever public safety requires. Anything less than the alienation of the entire property, either permanently as by deed, or temporarily, as by lease, would leave the public without adequate protection. A person injured by a defective grate should not be subject to the hazard of ascertaining the precise relation existing between the owner and one of his tenants with reference to the control of the grate, but a simple rule, resting upon ownership and possession, in whole or in part, of the adjacent structure, is required by sound public policy."

See, also, *Chicago v. Robbins, supra; Milford v. Holbrook, supra; Port Jervis v. First Nat. Bank,* 96 N. Y. 550.

We find no error in the record. The judgment is therefore affirmed.

HADLEY, C. J., FULLERTON, CROW, and ROOT, JJ., concur.